# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIEGO J. MORTERA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:22-cv-00521-JLT-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 13, 19, 21, 22)<br><br>**OBJECTIONS DUE IN FOURTEEN DAYS** |

## I.

## INTRODUCTION

Diego J. Mortera ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. Plaintiff presents four challenges: (1) the Administrative Law Judge ("ALJ") improperly addressed the medical opinions; (2) the ALJ improperly rejected Plaintiff's testimony; (3) the ALJ improperly rejected the lay witness testimony; and (4) the ALJ's step-four finding is not supported by substantial evidence.

The matter is currently before the Court on the parties' cross-motions for summary judgment, which were submitted, without oral argument. For the reasons set forth below, the Court recommends Plaintiff's motion for summary judgment be denied, Defendant's cross-motion for summary judgment be granted, and Plaintiff's social security appeal be denied.

**II.**

**BACKGROUND**

**A.    Procedural History**

On September 13, 2018,[1] Plaintiff filed a Title II application for a period of disability and disability insurance benefits, first alleging a period of disability beginning on June 15, 2017, and modified to August 24, 2017.[2]  Following denial of the application on initial and reconsideration review (AR 87-131), Plaintiff appeared for a hearing before the ALJ, Michael S. Condon, on July 17, 2020.  (AR 37-86.)  On May 28, 2021, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 21-31.)  On July 14, 2022, the Appeals Council denied Plaintiff's request for review.  (AR 1-8.)

On May 2, 2022, Plaintiff filed this action for judicial review.  (ECF No. 1.)  On August 8, 2022, Defendant filed the administrative record ("AR") in this action.  (ECF No. 13.)  Following three extensions of the briefing schedule, on November 7, 2022, Plaintiff filed an opening brief in support of summary judgment.  (Pl.'s Opening Br. Supp. Mot. ("Mot."), ECF No. 19.)  On June 28, 2023, Defendant filed an opposition brief and motion for cross-summary judgment.  (Def.'s Opp'n Mot. ("Opp'n"), ECF No. 21.)  On January 6, 2023, Plaintiff filed a reply.  (ECF No. 22.)

**B.    The ALJ's Findings of Fact and Conclusions of Law**

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, May 28, 2021:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2022.

2.  The claimant has not engaged in substantial gainful activity since August 24, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

---

[1]  The ALJ, the records, and the parties' briefing contain somewhat differing dates in September and October of 2018.  (See Mot. 7; Opp'n 2; AR 21, 211.)

[2]  Plaintiff's brief only appears to reflect the date of June 15, 2017, however the ALJ's opinion states: "Though the claimant's representative noted this alleged onset date at the hearing, prior to the hearing, the claimant had subsequently amended his alleged onset date to August 24, 2017."  (AR 21.)

3. The claimant has the following severe impairments: coronary artery disease (CAD), status-post stenting; hypertension; degenerative disc disease (DDD) of the thoracic and lumbosacral spine, with minor compression fractures of the thoracic spine and minor lumbar spine scoliosis; left knee medial meniscus tear, with narrowing of the articular cartilage in the medial femoral condyle and tibial plateau; degenerative disc disease (DDD) of the cervical spine; right shoulder calcific tendonitis; and diabetes mellitus (DM) (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift and/or carry up to 10 pounds; can sit for up to six hours total in an eight-hour workday; can stand and/or walk for up to two hours total in an eight-hour workday; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; can never operate leg or foot controls with the left lower extremity; cannot perform overhead reaching with the right upper extremity; and cannot perform fast-paced work, meaning assembly line or conveyor belt-type work, or jobs with a permanent or "per hour" production quota, though a daily production quota is acceptable.

6. The claimant is capable of performing past relevant work as a mental health outreach counselor (DOT #195.107-010, a skilled (SVP 7) and sedentary exertional level job, actually performed at the heavy exertional level). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 24, 2017, through the date of this decision (20 CFR 404.1520(f)).

(AR 21-31.)

# III.

# LEGAL STANDARD

## A.     The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[4] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[4] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits.  Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).   The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[5]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).   To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

---

[5] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1     **B.    Standard of Review**

2         Congress has provided that an individual may obtain judicial review of any final decision

3 of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g).

4 In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised

5 by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir.

6 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court

7 must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42

8 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). "Substantial evidence is

9 relevant evidence which, considering the record as a whole, a reasonable person might accept as

10 adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir.

11 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995));

12 see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence

13 standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary

14 sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means

15 more than a scintilla, but less than a preponderance; it is an extremely deferential standard."

16 Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal

17 quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

18 Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is

19 harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not

20 harmless "normally falls upon the party attacking the agency's determination." Shinseki v.

21 Sanders, 556 U.S. 396, 409 (2009).

22         Finally, "a reviewing court must consider the entire record as a whole and may not affirm

23 simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153,

24 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

25 Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may

26 review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th

27 Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is

28 not this Court's function to second guess the ALJ's conclusions and substitute the Court's

judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

**IV.**

**DISCUSSION AND ANALYSIS**

Plaintiff presents four challenges: (1) the ALJ improperly addressed the medical opinions; (2) the ALJ improperly rejected Plaintiff's testimony; (3) the ALJ improperly rejected the lay witness testimony; and (4) the ALJ's step-four finding is not supported by substantial evidence.  (Mot. 7.)

**A.      Plaintiff's Challenge to the ALJ's Weighing of Medical Opinions**

1.      General Legal Standards for Weighing Medical Opinions and Prior Administrative Medical Findings[6]

Where, as here, a claim is filed after March 27, 2017, the revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence.  See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources.  See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or

---

[6]   Under the applicable regulations for evaluating medical evidence, State agency medical and psychological consultants do not provide "medical opinions."  Rather, the new regulations use the term "prior administrative medical finding" to refer to findings "about a medical issue" made by the State agency medical and psychological consultants who review a claimant's medical file at the initial and reconsideration levels of the administrative process.  See 20 C.F.R. § 416.913(a)(5).  ALJs, however, must consider this evidence under the same rules that apply to "medical opinions" because these "consultants are highly qualified and experts in Social Security disability evaluation."  20 C.F.R. § 416.913a(b)(1); see also 20 C.F.R. § 416.913(a) (identifying "medical opinions" and "prior administrative medical findings" as categories of evidence an ALJ must consider), (a)(2) (defining "medical opinions").

prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).  As recently acknowledged by the Ninth Circuit, this means the 2017 revised Social Security regulations abrogate prior precedents requiring an ALJ to provide "clear and convincing reasons" to reject the opinion of a treating physician where uncontradicted by other evidence, or otherwise to provide "specific and legitimate reasons supported by substantial evidence in the record, " where contradictory evidence is present. Woods v. Kijakazi, 32 F.4th 785, 788–92 (9th Cir. 2022).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).  Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be."  20 C.F.R. § 404.1520c(c)(1).  Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be."  20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in her decision how persuasive she finds a medical opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. § 404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [she] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. §§ 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).  Nonetheless, even under the new regulatory framework, the Court still must

1   determine whether the ALJ adequately explained how she considered the supportability and

2   consistency factors relative to medical opinions and whether the reasons were free from legal

3   error and supported by substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS,

4   2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

5       2.    The Court finds the ALJ Properly Weighed the Medical Opinions

6           Plaintiff challenges the ALJ's weighing of the medical opinions of Plaintiff's treating and

7   examining doctors.  (Mot. 19-23.)  The Court does not find the Plaintiff's descriptions of the

8   treatment notes of Dr. Hussain, to present a specific developed challenge as to the ALJ's

9   weighing or lack of weighing of that specific doctor's opinion, but rather is incorporated as a

10  reinforcing treatment note in relation to the ALJ's weighing of Dr. Gonzaga's and Dr. Leonard's

11  opinions.  (See Mot. 19.)  Defendant does not mention Dr. Hussain in the opposition, and

12  although Plaintiff mentions Hussain's treatment notes again in reply, Plaintiff does not argue

13  Defendant failed to address a specific challenge as to Dr. Hussain's treatment notes or the ALJ's

14  specific weighing of the treatment notes.  Plaintiff does not appear to challenge the weighing of

15  the state agency physicians or other examiners.  The Court turns to the opinions of Dr. Gonzaga

16  and Dr. Leonard, and the ALJ's weighing of such.

17          Dr. Gonzaga opined as follows:

18                  Patient continues to exoerience [sic] chronic angina pectoris only
                    partially relieved with nitroglycerin. High levels of stress may
19                  exacerbate patient's symptoms of chest pain and may prevent
                    patient from working to full capacity if chest pain is not fully
20                  controlled. He continues to see his cardiologist and as of 09/2017
                    is being medically managed with agressive [sic] CV riskf [sic]
21                  factor modifications. If he continues to have chest pain, attempts
                    may be made to try and revascularize the diagonal branches,
22                  although intervention would be very difficulty [sic] based on chart
                    notes. Not likely that patient's chest pain is a direct result of
23                  patient's work; however, high levels of stress may exacerbate
                    patient's chest pain. Also not likely chest pain secondary to
24                  intemperat [sic] use of alcohol or drugs. Chest pain may persist
                    despite other employment role in the county service; however, I
25                  suspect that job responsibilities with minimal stress may decrease
                    the chances of exacerbating chest pain.
26
    (AR 398.)  Dr. Leonard opined as follows:
27
28                  Conclusions, Mr. Mortera suffers from deficient coronary artery
                    flow particularly in the region of his diagonal arteries, which are

1

2

3

4

not approachable with interventional therapy. Given that treaters have opined that he best be treated medically, his·disease is ·documented to be progressive. His angina! symptoms appear to be stabilized at this time, but in the opinion of this evaluator this candidate does not qualify to return to his usual occupation and is eligible for disability retirement.

5

6

7

Having reviewed the job description and primary duties provided handwritten, it is my opinion that the stressors associated with his occupation, if not the physical activities themselves, would preclude this patient from safely performing these duties. I believe he is a candidate and qualifies for disability retirement due to his underlying and progressive coronary artery disease.

8

(AR 603.)

9

The ALJ weighed Dr. Gonzaga's opinion as follows:

10

11

12

13

14

15

16

17

Michael Gonzaga, MD, one of the claimant's treatment providers, opined that high levels of stress may exacerbate the claimant's chest pain symptoms (4F/2). This opinion lacks supportability and consistency with the record. While Dr. Gonzaga supports his opinion with a treating relationship with the claimant, the limitations opined are vague and do not address the claimant's maximum functional capacity. The record is most consistent with cardio-stress limitations on performing fast-paced work, as evidenced by the claimant's responsiveness to treatment for his CAD, and improved cardiovascular diagnostic findings, but ongoing symptoms even in light of treatment (16F/9, 14; 18F/6-7, 49-54, 62-63). Accordingly, because this opinion is vaguely worded and does not address the claimant's maximum functional capacity, and is only somewhat consistent with the record, it is found unpersuasive.

18

19

20

21

22

(AR 30.)  As for Dr. Leonard, the ALJ stated: "The record also contains an opinion from Thomas Leonard, MD, an independent medical examiner, who opined the claimant was unable to perform his past work," and found that "the ultimate issue of the claimant's ability to work or perform his past work is an issue reserved for the Commissioner, and any opinions on this issue are not entitled to any deference or analysis.  (Id.)

23

24

25

26

27

28

Plaintiff argues the ALJ's assessment of these medical opinions has failed to accurately capture what types of activities exacerbate Plaintiffs stress and result in chest pain; that contrary to the ALJ's assertion, Dr. Leonard did not solely state, without context, that Plaintiff was disabled; Dr. Leonard explained he had reviewed the duties associated with Plaintiff's prior job and opined that "the stressors associated with his occupation, if not the physical activities themselves, would preclude this patient from safely performing these duties," (Tr. 603.); the

1   ALJ's assertion that precluding Plaintiff from fast-paced work would address the type of stress

2   Dr. Leonard and Dr. Gonzaga mentioned in their opinions is not supported by the record; that

3   Plaintiff explained in his testimony it is mental and emotional stress, such as interacting with

4   others or encountering emotional situations, which triggers his chest pain; that Dr. Leonard's

5   opinion supports this, noting that the stressors associated with Plaintiff's prior job are separate

6   from the physical tasks involved; that it is social, emotional, and intellectual stress which causes

7   Plaintiff's chest pain to flare, not the speed at which he works; and similarly, Dr. Hussain, as

8   explained that it is not exertion, but other types of stress, which trigger Mortera's chest pain.

9   Plaintiff additionally argues that although he does not have a severe mental impairment, Social

10  Security Ruling 85-15 provides guidance on the effects of work-related stress which may also be

11  instructive here.

12         Based on review of the opinion and the ALJ's statements weighing such, the Court finds

13  the ALJ properly evaluated Dr. Gonzaga's opinion and made specific findings regarding the

14  factors of consistency and supportability, in accordance with the regulations.  See 20 C.F.R. §

15  416.920c; Woods, 32 F.4th at 787.  The Court finds substantial evidence supports the ALJ's

16  finding that Dr. Gonzaga's opinion was not persuasive because it was vague and inconsistent

17  with other evidence in the record  (AR 30).  The Court agrees with Defendant that although the

18  ALJ recognized that Dr. Gonzaga supported this opinion by reference to his treatment

19  relationship with Plaintiff, the opinion was vague, and such vagueness is "not useful" because it

20  does not specify functional limits, and the lack of explanation prevented it from being more

21  persuasive.  See Ford, 950 F.3d at 1156; 20 C.F.R. § 404.1520c(c)(1) (the more supporting

22  explanation provided, the more persuasive an opinion).  As Defendant notes, Dr. Gonzaga did

23  not identify any work activities that would be affected by Plaintiff's medically determinable

24  impairments, but instead wrote that Plaintiff's chest pain—which was "[n]ot likely" a result of

25  his work—might be exacerbated by stress, and that potential exacerbation might prevent Plaintiff

26  from "working at full capacity;" Dr. Gonzaga "*suspect[ed]* that job responsibilities with minimal

27  stress *may* decrease the chances of exacerbating chest pain" (AR 398 (emphasis added)).  These

28  statements did not provide meaningful information about what Plaintiff could still do despite his

impairments or whether he had impairment-related limitations or restrictions.  See Ford, 950 F.3d at 1156.  Further, the Court finds substantial evidence supports the ALJ's finding that Dr. Gonzaga's speculation was not consistent with Plaintiff's response to treatment for coronary artery disease and improved diagnostic findings, while also accounting for Plaintiff's ongoing symptoms with treatment (AR 30 (citing AR 855-56 (normal ventricular function, CT findings, and coronary flow reserve, with no abnormal impressions), 898-903, 911-12)).  See 20 C.F.R. § 404.1520c(c)(2) (opinions that are more consistent with the evidence are more persuasive).

As for Dr. Leonard's opinion, the Court agrees it was not persuasive because it was on an issue reserved to the Commissioner (AR 30).  See 20 C.F.R. § 404.1520b.  Dr. Leonard reviewed Plaintiff's "job description and primary duties" and opined that he could not "safely perform[] these duties" and believed that Plaintiff was "a candidate for disability retirement" due to his heart condition (AR 603).  As the Commissioner's regulations explain, a statement about whether a person can do his past work are inherently neither valuable nor persuasive.  20 C.F.R. § 404.1520b(c)(3)(vi).  Consistent with the regulations, the ALJ found that Dr. Leonard's opinion was not entitled to any deference or analysis.

Last, as for Plaintiff's discussion of Social Security Ruling (SSR) 85-15, that regulation only applies to the evaluation of "solely nonexertional impairments," 1985 WL 56857, and the Court does not find the regulation persuasive as to Plaintiff's challenge in light of the record and the ALJ's opinion as a whole.

Accordingly, the Court recommends denying Plaintiff's challenge as to the ALJ's weighing of the medical opinions.  Further, the Court's discussion below of the ALJ's weighing of the subjective testimony and ultimate RFC determination, provides additional support to the Court's finding that the ALJ properly weighed the medical opinions.

**B.    Plaintiff's Challenge to the ALJ's Rejection of Plaintiff's Testimony and the Step Four RFC Determination**

1.    General Legal Standards as to Weighing Subjective Testimony

A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn,

495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment."). Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary. Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

In addition to the medical evidence, factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid. See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter, 504 F.3d at 1040; Smolen, 80 F.3d at 1284. Thus, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and

1  limiting effects of her symptoms; statements and other information from medical providers and

2  other third parties; and any other relevant evidence included in the individual's administrative

3  record.  SSR 16-3p, at *5.

   **a.    Allegations Unsupported/Contradicted by the Objective Medical Evidence**

5  Subjective pain testimony "cannot be rejected on the sole ground that it is not fully

6  corroborated by objective medical evidence."  See Vertigan, 260 F.3d at 1049 ("The fact that a

7  claimant's testimony is not fully corroborated by the objective medical findings, in and of itself,

8  is not a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2)

9  ("[W]e will not reject your statements about the intensity and persistence of your pain or other

10 symptoms or about the effect your symptoms have on your ability to work solely because the

11 available objective medical evidence does not substantiate your statements.").  Rather, where a

12 claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ

13 must provide an additional reason for discounting the testimony.  See Burch, 400 F.3d at 680–81.

14 Nevertheless, the medical evidence "is still a relevant factor in determining the severity

15 of [the] claimant's pain and its disabling effects."  Burch, 400 F.3d at 680–81; Rollins v.

16 Massanari, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

17 Furthermore, Ninth Circuit caselaw has distinguished testimony that is "uncorroborated" by the

18 medical evidence from testimony that is "contradicted" by the medical records, deeming the

19 latter sufficient on its own to meet the clear and convincing standard.  See Johnson v. Shalala, 60

20 F.3d 1428, 1434 (9th Cir. 1995) ("The ALJ … identified several contradictions between

21 claimant's testimony and the relevant medical evidence and cited several instances of

22 contradictions within the claimant's own testimony.   We will not reverse credibility

23 determinations of an ALJ based on contradictory or ambiguous evidence."); Hairston v. Saul,

24 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533

25 F.3d 1155, 1160 (9th Cir. 2008) (affirming ALJ's determination claimant's testimony was "not

26 entirely credible" based on contradictions with medical opinion) ("[c]ontradiction with the

27 medical record is a sufficient basis for rejecting the claimant's subjective testimony."); see also

28 see also Stobie v. Berryhill, 690 Fed. App'x 910, 911 (9th Cir. 2017) (finding ALJ gave two

specific and legitimate clear and convincing reasons for rejecting symptom testimony: (1) insufficient objective medical evidence to establish disability during the insured period and (2) symptom testimony conflicted with the objective medical evidence); Woods v. Comm'r of Soc. Sec., No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be  sufficient." (emphasis in original)).   In applying the clear and convincing standard, the Ninth Circuit affirmed "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle, at 533 F.3d at 1161.

### b.   Daily Activities ("ADLs")

"An ALJ may also consider whether the claimant engages in activities inconsistent with the alleged symptoms." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022).  Ninth Circuit caselaw demonstrates that ADLs may be grounds for discounting allegations that an impairment is so severe it is totally debilitating, even if such activities are not directly transferrable to a work setting. See Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir. 2012), superseded by regulation on other grounds (noting "the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferrable to a work setting … Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (internal citations omitted); see also Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (affirming the ALJ's decision where the claimant's allegations were inconsistent with activities of personal care, shopping, chores, riding public transportation, and driving; Burch, 400 F.3d at 680 (finding the ALJ properly discounted the claimant's allegations where the claimant's activities suggest higher functionality, including caring for personal needs, cooking, cleaning, shopping, and interacting with family).

### 2.   General Legal Standards as to Step Four RFC Determination

The RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§

404.1520(e), 404.1545(a), 416.945(a); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (RFC reflects current "physical and mental capabilities"); SSR 96-8p, at *2.  Thus, it represents the maximum amount of work the claimant is able to perform based on all the relevant evidence in the record.  See id.; see also 20 C.F.R. § 416.945(a)(3) (RFC determination must be "based on all of the relevant medical and other evidence.").  As previously noted, the RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2); 404.1546(c); Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545).  And where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict."  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); Batson, 359 F.3d at 1195; see also Lingenfelter, 504 F.3d at 1042 ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); Tommasetti, 533 F.3d at 1041–42 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

In reviewing whether an ALJ committed error in determining the RFC, the relevant inquiry is whether the medical evidence supports the ALJ's finding.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (holding the RFC assessment adequately captures restrictions if it is consistent with the concrete limitations in the medical opinions); see also Schneider v. Comm'r, 433 Fed. Appx. 507, 509 (9th Cir. 2011) (ALJ's failure to address claimant's migraines was harmless because medical record did not support finding that migraines would affect claimant's functioning at work).  Accordingly, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment."  Althoff-Gromer v. Comm'r of Soc. Sec., No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019) (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222–23 (9th Cir. 2010)); see also

Chavez v. Colvin, 654 Fed. App'x 374, 375 (10th Cir. 2016) (ALJ need not "parrot … exact descriptions of … limitations" to reach an RFC determination consistent with the medical record and claimant's limitations).

      3.     <u>The Court finds the ALJ Properly Considered the Plaintiff's Testimony and the RFC Determination is Proper and Supported by Substantial Evidence</u>

For the reasons explained below, the Court finds the ALJ properly weighed the Plaintiff's subjective testimony and made a proper RFC determination supported by substantial evidence.

Plaintiff argues the ALJ cited the objective medical evidence, generally, as contradicting Plaintiff's alleged limitations, but identified no particular findings inconsistent with any of the specific functional deficits Plaintiff described; that the ALJ has not specified which testimony he found not credible and has not provided clear and convincing reasons supported by evidence in the record to support the determination; that Plaintiff has set forth ample objective medical evidence to support his testimony regarding his ongoing chest pain triggered by stress, his back, shoulder, and knee pain, and the side effects of his necessary medications; that while the ALJ asserted Plaintiff had some response to treatment, particularly with nitroglycerin, Plaintiff's doctors have noted that despite some response to treatment, Plaintiff "continues to be very symptomatic," (Tr. 684.); that Plaintiff explained that although nitroglycerin relieves his chest pain, it also causes drowsiness (Tr. 71), which is a factor the ALJ erred in failing to address. Additionally, as for daily activities, Plaintiff argues contrary to the ALJ's assertions, Plaintiff described in his testimony a typical day for him, which included getting help from his wife with hygiene, watching cartoons (because dramatic movies remind him of his work and result in chest pain), going outside in the yard, coming back in, eating, sleeping, wrapping himself in a blanket, and occasionally reading (AR 64); he explained that his ability to do any household chores is very limited now and that he can take all day to do a load of laundry because he has to move it piece by piece (AR 70); and the ALJ has not attempted to explain how this very minimal level of activity, which requires help from others to accomplish, is in any way inconsistent with the limitations Plaintiff described.  (Mot. 24-26.)

The ALJ found Plaintiff's "medically determinable impairments could reasonably be

1    expected to cause the alleged symptoms; however, the claimant's statements concerning the

2    intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

3    medical evidence and other evidence in the record for the reasons explained in th[e] decision."

4    (AR 27.)

5        First, the ALJ stated that "[a]s for the claimant's statements about the intensity,

6    persistence, and limiting effects of his or her symptoms, they are inconsistent because, though

7    the claimant's CAD has continued to show symptoms despite treatment, the claimant's CAD has

8    shown some responsiveness to treatment, and the claimant's objective diagnostic findings have

9    improved [and] [a]dditionally, the claimant's other severe impairments have also shown

10   responsiveness to treatment."   (AR 27.)   The ALJ went into detail regarding the objective

11   medical evidence and responsiveness to treatment, specifically about the chest pain and

12   responsiveness to nitroglycerine:

13           Regarding the claimant's CAD status-post stenting, and
     hypertension, July 2017 treatment notes indicated as follows: the

14   claimant "developed worsening of chest pain and underwent
     coronary evaluation in July 2016 via right radial artery approach.

15   Angiography revealed left main mild tapering, LAD with a patent
     stent, jailed diagonal branch with 60-65% stenosis, second

16   diagonal branch ostial 50% stenosis, RCA mild plaquing
     approximately 35%. Elevated LV filling pressures noted.

17   Intervening on the moderate stenosis noted in the jailed diagonal
     branch does carry a risk of disturbing the LAD stent" (1F/8). In

18   August 2017, the claimant presented to the emergency room with
     angina, which was relieved by nitroglycerine (1F/11). On a left

19   heart catherization, the claimant displayed circumflex system
     without stenosis, moderate-sized codominant right coronary artery

20   with mild disease in its midportion the right of about 30-35%
     (1F/23-24). It further showed the diagonal branches, moderate

21   large LAD with patent stent without in-stent restenosis with no
     significant stenosis of the LAD, jailed small diagonal branch with

22   ostial 50-60% eccentric stenosis, and second diagonal branch had a
     small to moderate-sized 60% stenosis at its ostium (1F/23-24). He

23   was found to have moderate disease in the diagonal branches, but
     additional surgical intervention was assessed as a very difficult

24   possibility (3F/5-6).

25       At a February 2018 followup, the claimant was continuing to
     complain of chest pain and shortness of breath, though it was noted

26   these symptoms were relieved and relatively well controlled by
     nitroglycerine use (3F/9-12). September 2018 treatment notes

27   reflect the claimant reporting continued chest pain approximately
     10 times per month, but noted this occurred with stress and not

28   exertion, and that the symptoms were relieved with nitroglycerine

(3F/13-16).

In January 2019, an independent medical evaluator again noted that the claimant's anginal episodes were relieved with use of nitroglycerine, and that the claimant's CAD was symptomatic but stable (9F/17). August 2019 followup notes indicated that the claimant continued to be very symptomatic and was experiencing angina related to stress, but while a 30-day event monitor revealed some episodes of bradycardia, he was noted to have no significant tachy arrhythmias, and it was again noted that angina episodes were relieved by nitroglycerine (13F/4). The claimant underwent stress testing and an echocardiogram in September 2019, revealing grossly normal findings with no induced chest pain or ischemic changes (14F/1-4). In January 2020, the claimant presented to the emergency room reporting chest pain, but an EKG again showed grossly normal findings (18F/6-7, 49-54, 62-63). The claimant did still continue to endorse ongoing chest pain, shortness of breath, and fatigue in May and June 2020 (16F/9, 14).

(AR 28.) The ALJ then discussed how these records and course of treatment impacted the RFC:

These impairments cause the claimant's exertional, lifting, carrying, sitting, standing, walking, and postural limitations, as outlined in the residual functional capacity above. Due to the claimant's fatigue and need for lower-stress work to avoid exacerbating his CAD, these impairments also cause the limitations on fast-paced work, as outlined in the residual functional capacity above. These impairments are not more limiting than outlined in the residual functional capacity above because, while the claimant has continued to display symptoms of CAD, his diagnostic findings improved with stenting, his acute anginal episodes are noted to be responsive and well-controlled with nitroglycerine, and the most recent stress testing and cardiovascular imaging for the claimant has been grossly within normal limits.

(AR 28.) The ALJ then moved on to discuss thoracic and lumbosacral spine impairments, and knee impairments:

Regarding the claimant's DDD of the thoracic and lumbosacral spine, with minor compression fractures of the thoracic spine and minor lumbar spine scoliosis, and left knee medial meniscus tear, with narrowing of the articular cartilage in the medial femoral condyle and tibial plateau, August 2018 physical therapy notes reflect the claimant reporting lower back pain dating back to a 2014 motor vehicle accident, but reporting that pain had worsened since February 2018, and increased with prolonged sitting or when standing up from laying down (5F/11). In November 2018, the claimant complained of left knee pain, and imaging of the left knee revealed a small medial meniscus tear, and significant narrowing of the articular cartilage in the medial femoral condyle and tibial plateau (7F/2-3; 10F/22; 17F/44). August 2018 imaging of the claimant's lumbar spine was grossly unremarkable (7F/37).

> However, while February 2019 imaging of the claimant's lumbar and thoracic spine revealed mild-to-moderate facet arthropathy and some old thoracic spine compression fractures, the imaging showed otherwise only mild degenerative changes, with no significant canal or neural encroachment (9F/18-19, 22; 10F/16, 18). The claimant has experiences improvement of his back pain with physical therapy, reporting approximately 30% improvement to the point he was able to perform gardening (7F/2-3; 17F/35, 48-51, 58). He has stated his knee pain has been responsive to medications, and he has not sought more aggressive treatment (7F/2).

(AR 28.)   The ALJ discussed how those impairments and response to treatment impacted the RFC as follows: "[t]hese impairments cause the claimant's limitations on use of the left lower extremity, and contribute to the claimant's exertional, lifting, carrying, sitting, standing, walking, and postural limitations, as outlined in the residual functional capacity above . . . [and] are not more limiting than outlined in the residual functional capacity above because the claimant's lower back and left knee have been responsive to conservative treatment in the form of physical therapy and medication management."  (AR 28.)   The ALJ then discussed the cervical spine and shoulder ailments:

> Regarding the claimant's DDD of the cervical spine, and right shoulder calcific tendonitis, May 2018 imaging of the claimant's cervical spine has shown mild-to-moderate degenerative changes, with some foraminal encroachment (7F/14-15, 39-41; 9F/20-21). In January 2020, the claimant reported worsening right shoulder pain (15F/5). Imaging of the claimant's right shoulder showed tendinitis (15F/40). However, the record reflects minimal treatment for the claimant's neck or right shoulder, despite a referral for physical therapy, and regularly shows grossly normal findings in the claimant's neck and right shoulder on physical examinations, including normal range of motion (7F/14, 18; 15F/3, 7; 18F/17, 55).

(AR 28-29.)   The ALJ again discussed how such impairments impacted the RFC as follows: "These impairments cause the claimant's limitations on use of the right upper extremity, and contribute to the claimant's exertional, lifting, and carrying limitations, as outlined in the residual functional capacity above . . . [but] are not more limiting than outlined in the residual functional capacity above because the record does not reflect the claimant pursuing significant treatment for these impairments, and the claimant has shown generally mild signs of cervical and right shoulder impairment on objective imaging."   (AR 29.)   The ALJ then discussed Plaintiff's

diabetes, including the impact of such on the ALJ's RFC determination:

> Regarding the claimant's DM, the claimant has pursued treatment for his DM, and has been responsive to medication, with his A1c levels remaining at 7.0% or lower (11F/14; 15F/5, 19; 16F/8). The claimant affirmed at the hearing that his DM is well-controlled and asymptomatic with medication (Testimony). In accordance with SSR 14-2p, the undersigned has considered whether the claimant's diabetes mellitus creates any functional limitations for the claimant, either alone or in combination with other impairments, and has determined that the claimant's diabetes mellitus does not cause any further limitations than those noted in the residual functional capacity. Specifically, the undersigned finds that this impairment contributes to the claimant's exertional, lifting, carrying, sitting, standing, walking, and postural limitations, as outlined in the residual functional capacity above. This impairment is not more limiting than outlined in the residual functional capacity above because the claimant's DM has been responsive to medication and well-controlled.

(AR 29.)

Based on the Court's review of the above analysis performed by the ALJ as to the objective medical evidence, course of treatment and response to such treatment in the record as a whole, and findings of inconsistency between the testimony and such, the Court finds the ALJ has provided sufficient clear and convincing reasons for discounting Plaintiff's subjective testimony.  Valentine, 574 F.3d at 693; Lambert, 980 F.3d at 1277; Carmickle, at 533 F.3d at 1161.

Further, another reason the ALJ provided for discounting Plaintiff's testimony was his activities of daily living.  See Smartt, 53 F.4th at 499 ("An ALJ may also consider whether the claimant engages in activities inconsistent with the alleged symptoms.")   The ALJ made the following findings:

> In addition to the above medical evidence of record, the undersigned considered the claimant's activities of daily living. In pre-hearing statements and in testimony at the hearing, the claimant stated that he can live with others, watch TV, take walks for leisure, read, wash dishes, shop in stores for groceries, do laundry, do house cleaning, care for pets, manage his own personal care, pay bills, count change, spend time with his grandchildren, attend church, follow instructions, and get along with authority figures (4E; Testimony). While the undersigned acknowledges that the claimant has some limitations in performing these activities, and while none of these activities is dispositive, taken together and considered in conjunction with the above evidence of record, they suggest the claimant's impairments are less limiting than alleged.

(AR 29.)   As the Ninth Circuit has explained, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."   Molina, 674 F.3d at 1113; Valentine, 574 F.3d at 694 (while daily activities "did not suggest [Plaintiff] could return to his old job [they] did suggest that [Plaintiff's] later claims about the severity of his limitations were exaggerated").   The Court finds the ALJ's reliance on daily activities supported by substantial evidence and supports finding the ALJ provided sufficient clear and convincing reasons for rejecting the Plaintiff's testimony.

Accordingly, the Court finds the objective medical evidence referenced by the ALJ, the contradictions identified in the medical record, the findings regarding responsiveness to treatment, and the findings regarding daily activities, constitutes substantial evidence in the record that, and properly supports the ALJ's adverse credibility determination.   Lambert, 980 F.3d at 1277; Hairston, 827 Fed. App'x at 773; Carmickle, 533 F.3d at 1160; Woods, 2022 WL 1524772, at *10 n.4.

Plaintiff's step four challenge essentially amounts to an argument the RFC determination is unsupported by the ALJ's failure to properly weigh the subjective testimony of Plaintiff and the lay witness, and the physician opinions.   (See Mot. 29.)   The Court rejects these underlying challenges for the reasons explained throughout this recommendation, and thus recommends rejecting Plaintiff's step four challenge.   Based on the Court's review and the applicable legal standards, the Court finds the ALJ's overall RFC determination, weighing of the medical opinions and administrative findings, and weighing of the subjective testimony, to be free from legal error.   Consequently, because the ALJ "gave sufficient reasons for rejecting [Plaintiff's] testimony, his hypothetical to the vocational expert and his [RFC] assessment did not need take [Plaintiff's] subjective complaints into consideration."   Gardner v. Barnhart, 73 Fed. App'x 193, 196 (9th Cir. 2003).

Thus, upon review of the ALJ's evaluation of the full record, the Court finds the ALJ properly synthesized the medical evidence, resolved conflicts and ambiguities in the medical testimony, and determined credibility in order to reach a well-supported RFC determination,

1   Andrews, 53 F.3d at 1039; Batson, 359 F.3d at 1195; Lingenfelter, 504 F.3d at 1042, such that

2   the ALJ's ultimate conclusion of nondisability is adequately supported by substantial evidence.

3   Finally, "[a]s [the Court] cannot say that the ALJ's interpretation of the available evidence was

4   not rational, the ALJ's conclusions were supported by substantial evidence." Shaibi v. Berryhill,

5   883 F.3d 1102, 1108 (9th Cir. 2017).  Accordingly, the Court recommends the ALJ's decision be

6   affirmed as to these challenges.

7           **C.**      **Any Error as to the Lay Witness Testimony is Harmless**

8          The Ninth Circuit has held that "[l]ay testimony as to a claimant's symptoms is

9   competent evidence that an ALJ must take into account, unless he or she expressly determines to

10  disregard such testimony and gives reasons germane to each witness for doing so." Tobeler v.

11  Colvin, 749 F.3d 830, 832 (9th Cir. 2014) (citations omitted); see also Molina v. Astrue, 674

12  F.3d 1104, 1111 (9th Cir. 2012).  In giving "germane reasons" for disregarding a lay witness's

13  testimony, the ALJ "should explain the weight given to opinions from these sources or otherwise

14  ensure that the discussion of the evidence in the determination or decision allows a claimant or

15  subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an

16  effect on the outcome of the case." Wilson v. Berryhill, No. 17-cv-05385-PJH, 2018 WL

17  6421874, at *12 (N.D. Cal. Dec. 6, 2018).  Germane reasons must also be specific. Bruce v.

18  Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).

19         Plaintiff's son provided a third-party statement about Plaintiff's limitations, that the ALJ

20  specifically stated "contained allegations largely consistent with the claimant's allegations."

21  (AR 27; 247-254.)  Plaintiff challenges the lack of specific weighing or further rejection of the

22  testimony.  Plaintiff does not dispute the ALJ's finding that the lay witness testimony mirrored

23  Plaintiff's, but rather argues the underlying rejection of Plaintiff's testimony was improper.  (See

24  Reply 8 ("Despite the Commissioner's claims to the contrary at pages 8-9 of Defendant's Cross

25  Motion, Mortera maintains this was legal error.  The ALJ's rationale for discounting Mortera's

26  testimony was improper and is equally improper when applied to the statement of the lay

27  witness.").)

28         However, because Plaintiff's son's statements regarding Plaintiff's activities and

symptoms largely mirrored Plaintiff's testimony, the same reasons the Court previously discussed for discounting Plaintiff's allegations apply to the lay witness.  See, 574 F.3d at 694 (ALJ's valid reasons for rejecting claimant's testimony were equally germane to similar lay testimony); Lewis, 236 F.3d at 512 (stating that the ALJ "noted arguably germane reasons for dismissing the [lay] testimony, even if he did not clearly link his determination to those reasons"); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (approving ALJ's dismissal of daughters' lay testimony on basis that they were merely repeating the claimant's statements, where daughters' statements did not explain sufficiently when and to what extent they had the opportunity to observe their mother).

In light of the Court's conclusion that the ALJ provided clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony, and because the ALJ found the lay witness testimony mirrored Plaintiff's complaints, implicitly rejecting the lay witness statement, to the extent the observation of the consistency between the lay witness statement and Plaintiff's testimony was insufficient absent an explicit rejection of the lay witness testimony, Tobeler, 749 F.3d at 832, the Court finds any error to be harmless in light of the proper rejection of Plaintiff's underlying testimony.  See Molina, 674 F.3d at 1122 ("Here, the ALJ failed to explain her reasons for rejecting the lay witnesses' testimony.  That testimony, however, did not describe any limitations beyond those Molina herself described, which the ALJ discussed at length and rejected based on well-supported, clear and convincing reasons.").

## V.

### CONCLUSION AND RECOMMENDATION

In a substantial evidence review, "a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." Biestek, 139 S.Ct. at 1154.  "Even assuming without deciding that the medical evidence could support conflicting inferences, the court must defer to the Commissioner where the evidence is susceptible to more than one rational interpretation."  Quinones v. Astrue, No. CV 08-7225 AGR, 2009 WL 3122880, at *3 (C.D. Cal. Sept. 25, 2009) (citing Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)); see also Andrews, 53 F.3d at 1039 ("The ALJ is responsible for

1  determining credibility, resolving conflicts in medical testimony, and for resolving

2  ambiguities.").  So long as substantial evidence supports the ALJ's assessment of a claimant's

3  subjective complaints, the Court will not engage in "second-guessing." Thomas, 278 F.3d at

4  959; see also Davis v. Berryhill, 736 Fed. App'x 662, 665 (9th Cir. 2018) ("Though [the

5  claimant] may disagree with the ALJ's interpretation of the record, the latter's interpretation is

6  supported by substantial evidence, which precludes the Court from engaging in second-

7  guessing.").  Thus, while Plaintiff may seek to suggest an alternative interpretation of this

8  evidence, such is not sufficient to establish reversible error. See Ford, 950 F.3d at 1154; Burch,

9  400 F.3d at 679 (citations omitted).

10         There is "a presumption that ALJs are, at some level, capable of independently reviewing

11  and forming conclusions about medical evidence to discharge their statutory duty to determine

12  whether a claimant is disabled and cannot work." Farlow v. Kijakazi, 53 F.4th 485, 488 (9th Cir.

13  2022); Tommasetti, 533 F.3d at 1041–42 ("[T]he ALJ is the final arbiter with respect to

14  resolving ambiguities in the medical evidence."); Batson, 359 F.3d at 1193 ("[T]he

15  Commissioner's findings are upheld if supported by inferences reasonably drawn from the record

16  . . . and if evidence exists to support more than one rational interpretation, we must defer to the

17  Commissioner's decision.") (citations omitted).  The Court finds the ALJ provided sufficient

18  clear and convincing reasons for discounting the subjective symptom testimony, reasonably and

19  properly weighed the medical opinions and administrative findings, and issued a proper RFC

20  determination supported by substantial evidence, and an opinion free from harmful error. See

21  Bayliss, 427 F.3d at 1214 n.1 (" If the record would support more than one rational

22  interpretation, we defer to the ALJ' s decision" ); Burch, 400 F.3d at 679 (same); Smartt, 53

23  F.4th at 494 (same); Batson, 359 F.3d at 1193 ("the Commissioner's findings are upheld if

24  supported by inferences reasonably drawn from the record").

25         Accordingly, IT IS HEREBY RECOMMENDED that:

26         1.     Plaintiff's motion for summary judgment be DENIED;

27         2.     Defendant's cross-motion for summary judgment be GRANTED;

28         3.     Plaintiff's appeal from the decision of the Commissioner of Social Security be

1    DENIED; and

2    4.    Judgment be entered in favor of Defendant Commissioner of Social Security and

3          against Plaintiff Diego J. Mortera.

4    These findings and recommendations are submitted to the District Judge assigned to this

5    action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen**

6    **(14) days** of issuance of this recommendation, any party may file written objections to the

7    findings and recommendations with the Court.   Such a document should be captioned

8    "Objections to Magistrate Judge's Findings and Recommendations."  The District Judge will

9    review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. §

10   636(b)(1)(C).  The parties are advised that failure to file objections within the specified time

11   may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir.

12   2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

13

14   IT IS SO ORDERED.

15   Dated:   **January 19, 2024**

16                                              UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28