UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIEGO J. MORTERA,<br><br>    Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security[1],<br><br>    Defendants. | Case No.: 1:22-cv-0521 JLT SAB<br><br>ORDER DECLINING TO ADOPT THE RECOMMENDATIONS, GRANTING PLAINTIFF'S APPEAL, DENYING THE COMMISSIONER'S REQUEST TO AFFIRM, AND REMANDING THE ACTION FOR FURTHER PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT<br><br>(Docs. 19, 21, and 23) |

Diego Mortera seeks review of a decision denying his application for a period of disability and disability insurance benefits. (Docs. 1, 19.) Plaintiff contends substantial evidence does not support the finding that he can perform his past relevant work, because the ALJ erred evaluating the medical evidence, Plaintiff's subjective complaints, and a third party, lay witness statement. (Doc. 19-1.) The Commissioner asserts the Court should affirm the administrative findings. (Doc. 21 at 2; *see also id.* at 3-12.) For the reasons set forth below, Plaintiff's appeal from the administrative decision is granted and the matter is remanded for further administrative proceedings.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Martin O'Malley as the defendant in this suit.

1

## I.   Decision of the ALJ

The ALJ evaluated Plaintiff's application using the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(g). (Doc. 13-2 at 27-35.) First, the ALJ determined Plaintiff did not engage in substantial gainful activity after his alleged onset date of October 26, 2018. (*Id.* at 27.) Second, the ALJ found Plaintiff's severe impairments included:

> coronary artery disease (CAD), status-post stenting; hypertension; degenerative disc disease (DDD) of the thoracic and lumbosacral spine, with minor compression fractures of the thoracic spine and minor lumbar spine scoliosis; left knee medial meniscus tear, with narrowing of the articular cartilage in the medial femoral condyle and tibial plateau; degenerative disc disease (DDD) of the cervical spine; right shoulder calcific tendonitis; and diabetes mellitus (DM).

(*Id.* at 27-28.) At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (*Id.* at 28-29.) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift and/or carry up to 10 pounds; can sit for up to six hours total in an eight-hour workday; can stand and/or walk for up to two hours total in an eight-hour workday; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; can never operate leg or foot controls with the left lower extremity; cannot perform overhead reaching with the right upper extremity; and cannot perform fast-paced work, meaning assembly line or conveyor belt-type work, or jobs with a permanent or "per hour" production quota, though a daily production quota is acceptable.

(*Id.* at 30.) In so finding, the ALJ indicated that he considered "the entire record," including medical evidence, Plaintiff's subjective complaints, and third-party statement. (*Id.*; *see also id.* at 30-35.) At step four, the ALJ found Plaintiff was able to perform his past relevant work as a mental health outreach counselor, "as generally performed," with this RFC (*Id.* at 34-35.) Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id*. at 35.)

## II.   Findings and Recommendations

The magistrate judge observed that Plaintiff did not challenge the ALJ's evaluation all medical evidence. (Doc. 23 at 9.) The magistrate judge found "Plaintiff's descriptions of the treatment notes of Dr. Hussain" were insufficient "to present a specific developed challenge as to the ALJ's weighing or lack of weighing of that specific doctor's opinion." (*Id.*) In addition, the magistrate judge found Plaintiff did "not appear to challenge the weighing of the state agency physicians…." (*Id.*) Thus, the

magistrate judge found Plaintiff challenged only the weight given to the medical opinions from Plaintiff's treating and examining physicians, Drs. Gonzaga and Leonard. (*Id.*)

The magistrate judge found the ALJ properly evaluated the opinions of Drs. Gonzaga and Leonard by weighing the supportability and consistency of each opinion. (Doc. 23 at 9-12.) The magistrate judge determined "substantial evidence supports the ALJ's finding that Dr. Gonzaga's opinion was not persuasive because it was vague and inconsistent with other evidence in the record." (*Id.* at 11.) In addition, the magistrate judge found substantial evidence supported the ALJ's finding that the opinion of Dr. Gonzaga "was not consistent" with other evidence in the record, including "Plaintiff's response to treatment for coronary artery disease and improved diagnostic findings, while also accounting for Plaintiff's ongoing symptoms with treatment." (*Id.* at 12.) The magistrate judge also found the ALJ properly determined that "Dr. Leonard's opinion was not entitled to any deference or analysis" because the opinion "was on an issue reserved to the Commissioner." (*Id.*) Therefore, the magistrate judge "recommend[ed] denying Plaintiff's challenge as to the ALJ's weighing of the medical opinions." (*Id.*) Further, the magistrate judge found Plaintiff's discussion related to SSR 85-15, which "applies to the evaluation of solely nonexertional impairments," was unpersuasive in evaluating the medical evidence. (*Id.*, internal quotation marks omitted.)

Examining the ALJ's analysis of Plaintiff's subjective statements, the magistrate judge found Plaintiff's challenge was unavailing. (Doc. 23 at 12-15, 17-22.) The magistrate judge determined that "the objective medical evidence referenced by the ALJ, the contradictions identified in the medical record, the findings regarding responsiveness to treatment, and the findings regarding daily activities, constitutes substantial evidence in the record…, and properly supports the ALJ's adverse credibility determination." (*Id.* at 22.)

The magistrate judge observed: "Plaintiff's step four challenge essentially amounts to an argument the RFC determination is unsupported by the ALJ's failure to properly weigh the subjective testimony of Plaintiff and the lay witness, and the physician opinions." (Doc. 23 at 22.) The magistrate judge "reject[ed] these underlying challenges," and found "ALJ's overall RFC determination, weighing of the medical opinions and administrative findings, and weighing of the subjective testimony, to be free from legal error." (*Id.*) The magistrate judge opined the ALJ reached

3

1 "a well-supported RFC determination," and the "ultimate conclusion of nondisability is adequately
2 supported by substantial evidence." (*Id.* at 22-23.) Thus, the magistrate judge recommended "the
3 ALJ's decision be affirmed as to these challenges." (*Id.*) Finally, the magistrate judge found that "any
4 error as to the lay witness testimony is harmless." (Doc. 23 at 23, emphasis omitted.) The magistrate
5 judge opined that "because Plaintiff's son's statements regarding Plaintiff's activities and symptoms
6 largely mirrored Plaintiff's testimony, the same reasons the Court previously discussed for discounting
7 Plaintiff's allegations apply to the lay witness." (*Id.* at 23-24.)

8       The magistrate judge observed: "while Plaintiff may seek to suggest an alternative
9 interpretation of [the] evidence, such is not sufficient to establish reversible error." (Doc. 23 at 25.)
10 Rather, the magistrate judge found the ALJ's decision was supported by substantial evidence and "free
11 from harmful error." (*Id.*) Therefore, the magistrate judge recommended the Court deny Plaintiff's
12 appeal and enter judgment in favor of the Commissioner. (*Id.* at 25-26.)

13 **III.    Objections**

14       Plaintiff objects to the Findings and Recommendations, asserting the magistrate judge erred in
15 addressing each of the four issues raised in his opening brief. (Doc. 24.) Plaintiff contends the
16 magistrate judge erred in finding the ALJ properly evaluated the medical evidence. (*Id.* at 6.) Plaintiff
17 "maintains that the ALJ failed to provide a valid rationale addressing these factors and supported by
18 substantial evidence for finding the opinions of his treating doctors were not persuasive." (*Id.*; *see also*
19 *id.* at 6-9.) He argues, "the ALJ improperly rejected critical aspects of the opinions of [his] treating and
20 examining doctors in the absence of legally adequate reasons for doing so." (*Id.* at 9.)

21       Plaintiff argues the magistrate judge erred in finding the ALJ identified "clear and convincing
22 reasons to discount [his] testimony." (Doc. 24 at 9.) He "maintains that the ALJ erred in identifying
23 no particular findings inconsistent with any of the specific functional deficits [he] described." (*Id.*)
24 He contends the ALJ did not link the medical records to Plaintiff's testimony or "account for side
25 effects from [his] meditations." (*Id.* at 9-10.) Plaintiff also argues the magistrate judge erred by
26 finding his daily activities supported the ALJ's rejection of his subjective statements. (*Id.* at 10-11.)
27 Thus, Plaintiff asserts the Court should "credit [his] testimony as a matter of law, find [him] disabled,
28 and remand this matter for payment of benefits." (*Id.* at 12.)

Plaintiff's third objection is that the "the magistrate judge erred in finding that the ALJ properly addressed the lay witness testimony." (Doc. 24 at 12, emphasis omitted.) Plaintiff asserts the ALJ "gave no reasons for discounting the limitations the witness described," and "the ALJ's failure to base his rejection of the lay witness statement on the record and to give specific and legitimate reasons (or any reasons at all) germane to each witness is reversible error." (*Id.* at 13.)

Finally, Plaintiff argues "the magistrate judge erred in finding that the ALJ's step-four finding was supported by substantial evidence." (Doc. 24 at 14, emphasis omitted.) He "maintains … the ALJ improperly omitted from the vocational hypothetical [Plaintiff's] credible allegations, the limitations noted by the lay witness, and the limitations assessed by [Plaintiff's] treating and examining providers." (*Id.*) According to Plaintiff, the vocational expert's testimony that Plaintiff could perform the occupation identified "was based on the ALJ's failure accurately to pose all of [Plaintiff's] limitations, and as a result the testimony "has no evidentiary value." (*Id.*) Thus, Plaintiff concludes the ALJ's "decision is not based on substantial evidence," and the matter should be remanded for a payment of benefits. (*Id.* at 14-15.)

The Commissioner filed a response to Plaintiff's objections, maintaining that the ALJ properly evaluated the evidence, and the decision is supported by substantial evidence in the record. (Doc. 25.)

**IV.    Discussion**

A district judge may "accept, reject or modify, in whole or in part, the findings and recommendations..." 28 U.S.C. § 636(b)(1). If a party files objections, "the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendations to which objection is made." *Id.* A de novo review requires the Court to "consider[] the matter anew, as if no decision had been rendered." *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009).

**A.    Evaluation of medical opinions**

The regulations direct ALJs to determine how persuasive a medical opinion is according to the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors showing the medical source's "familiarity with … other evidence in the record or an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)-(5). An ALJ is only required to discuss supportability and consistency, which are the

most important factors "when evaluating the persuasiveness of medical opinions." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(a)); *see also* 20 C.F.R. § 416.920c(b)(2) ("we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.  We may, but are not required to, explain how we considered the [remaining] factors in paragraphs (c)(3) through (c)(5) of this section…").

The supportability inquiry is an assessment of "the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Woods*, 32 F.4th at 791-792 (internal quotation marks omitted).  The regulations provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1).  On the other hand, consistency compares an opinion with other evidence in the record to determine its persuasiveness.  *See Woods*, 32 F.4th at 792.  With the "consistency" factor, the regulations explain: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).  The Ninth Circuit observed that an ALJ must explain how both the supportability and consistency factors were considered, and "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

### 1. Opinions not challenged

As the magistrate judge found, Plaintiff did not specifically challenge the ALJ's analysis related to the opinion and treatment notes of Dr. Hussain or challenge the weighing of the opinions from the state agency physicians. (Doc. 23 at 9.)  Plaintiff does not dispute this finding in his objections.  The Court will "review only issues with are argued specifically and distinctly." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).  Accordingly, the Court finds any challenge to the opinions of these physicians was waived.  *See id.* at 929-30.

2. Opinion of Dr. Gonzaga

Dr. Michael Gonzaga, one of Plaintiff's treating physicians, wrote a letter opinion, under penalty of perjury, following a medical visit on March 22, 2018. (Doc. 13-2 at 401.) Dr. Gonzaga indicated Plaintiff had been under his care since January 2018, and Dr. Gonzaga provided a brief history "obtained both from [Plaintiff] and per chart review." (*Id.*) He indicated that nitroglycerin "only partially relieved" Plaintiff's angina pectoris. (*Id.* at 402.) In addition, Dr. Gonzaga opined:

> High levels of stress may exacerbate patient's symptoms of chest pain and may prevent patient from working to full capacity if chest pain is not fully controlled. He continues to see his cardiologist and as of 09/2017 is being medically managed with [aggressive] CV risk[] factor modifications. If he continues to have chest pain, attempts may be made to try and revascularize the diagonal branches, although intervention would be very difficult[] based on chart notes. Not likely that patient's chest pain is a direct result of patients work; however, high levels of stress may exacerbate patient's chest pain. Also not likely chest pain secondary to intemperat [sic] use of alcohol or drugs. Chest pain may persist despite other employment role in the county service; however, I suspect that job responsibilities with minimal stress may decrease the chances of exacerbating chest pain.

(*Id.*)

The ALJ determined Dr. Gonzaga's statement that "high levels of stress may exacerbate the claimant's chest pain symptoms … lacks supportability and consistency with the record." (Doc. 13-2 at 34.) The ALJ opined:

> While Dr. Gonzaga supports his opinion with a treating relationship with the claimant, the limitations opined are vague and do not address the claimant's maximum functional capacity. The record is most consistent with cardio-stress limitations on performing fast-paced work, as evidenced by the claimant's responsiveness to treatment for his CAD, and improved cardiovascular diagnostic findings, but ongoing symptoms even in light of treatment (16F/9, 14; 18F/6-7, 49-54, 62-63). Accordingly, because this opinion is vaguely worded and does not address the claimant's maximum functional capacity, and is only somewhat consistent with the record, it is found unpersuasive.

(*Id.*) With this discussion, the ALJ articulated specific findings regarding the supportability and consistency factors.

Under the new regulations, the supportability inquiry is "geared toward assessing how well a medical source supported *and explained*" his or her opinion. *Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682 at *10 (S.D.N.Y. Jan. 29, 2021) (emphasis added). As the magistrate judge found, Dr.

Gonzaga did not explain his opinion related to stress, or otherwise "provide meaningful information about what Plaintiff could still do despite his impairments or whether he had impairment-related limitations or restrictions." (Doc. 23 at 11-12.) Rather, the limitations to which Dr. Gonzaga alluded remained vague. The ALJ's finding the opinion was "vaguely worded" supports a conclusion that Dr. Gonzaga's opinion is less persuasive under the "supportability" factor. *See, e.g., Wages v. O'Malley*, 2024 WL 418179, at *8 (E.D. Cal. Feb. 5, 2024) (the ALJ's determination that a physician was was vague in identifying the claimant's physical limitations was "appropriately discussed in relation to the supportability factor"); *see also Ramirez v. Comm'r of Soc. Sec. Admin.*, 2022 WL 3443677, at *7 (D. Az. Aug. 17, 2022) (ALJ addressed supportability of medical opinion by noting the provider relied on vague terms to describe the degree of Plaintiff's limitations).

Furthermore, the ALJ adequately considered the extent to which Dr. Gonzaga's opinion was consistent with other evidence in the record. (Doc. 13-2 at 34, citing Exh. 16F/9, 14; 18F/6-7, 49-54, 62-63 [Doc. 13-2 at 759, 764, 859-860, 902-907, 915-916].) Because the ALJ identified inconsistencies with other evidence in the record—including improved cardiovascular diagnostic findings and normal ventricular function tests—the ALJ sufficiently performed the consistency analysis to explain why the opinion was unpersuasive.[2] *See* 20 C.F.R. § 404.1520c(c)(2); *see also Kelley v. Kijakazi*, 2023 WL 6999445, at *2 (9th Cir. Oct. 24, 2023) (finding an ALJ's analysis of the consistency factor "was sufficient under the regulations" when the ALJ found medical opinions were inconsistent with other evidence in the record, including normal examinations).

### 3. Opinion of Dr. Leonard

Dr. Thomas Leonard performed an Independent Medical Evaluation on January 7, 2019. (Doc. 13-2 at 591.) Dr. Leonard took Plaintiff's reported medical history; performed a physical examination; and reviewed Plaintiff's medical records, employment application, employment eligibility verification, and retirement application. (*Id.* at 591-607.) Dr. Leonard stated his "Conclusions" as follows:

> Mr. Mortera suffers from deficient coronary artery flow particularly in the region of his diagonal arteries, which are not approachable with

---

[2] Despite the finding that the decision was "unpersuasive," the ALJ clearly did not *fully* reject the stress-related limitations suggested by Dr. Gonzaga. The ALJ indicated that he accounted for Plaintiff's "need for lower-stress work to avoid exacerbating his CAD" by excluding Plaintiff from "fast-paced work" in the residual functional capacity. (Doc. 13-2 at 31; *see also id.* at 30.)

8

> interventional therapy. Given that treaters have opined that he best be treated medically, his disease is documented to be progressive. His anginal symptoms appear to be stabilized at this time, but in the opinion of this evaluator this candidate does not qualify to return to his usual occupation and is eligible for disability retirement.
>
> Having reviewed the job description and primary duties provided handwritten, it is my opinion that the stressors associated with his occupation, if not the physical activities themselves, would preclude this patient from safely performing these duties. I believe he is a candidate and qualifies for disability retirement due to his underlying and progressive coronary artery disease.

(*Id.* at 607.)  Plaintiff contends the ALJ erred in addressing this opinion, because "Dr. Leonard did not solely state, without context, that [Plaintiff] was disabled."  (Doc. 19-1 at 20.)  According to Plaintiff, "Dr. Leonard explained he had reviewed the duties associated with [his] prior job" and then offered the conclusion that Plaintiff was precluded from the work.  (*Id.*)

The regulations explain that a "medical opinion is a statement from a medical source about what [a claimant] can still do despite [his] impairment(s)."  20 C.F.R. § 404.1513(a)(2). Further, the regulations explain to claimants:

> Medical opinions in adult claims are about impairment-related limitations and restrictions in:
>
> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2)(i).  This information is clearly not included in Dr. Leonard's statement.  Dr. Leonard did not identify any specific abilities or limitations in his opinion.  (Doc. 13-2 at 607.)  Further, Dr. Leonard did not identify what "stressors associated with [the] occupation" or "physical activities" he believed precluded Plaintiff from performing his prior work.  (*Id.*)  Without information

9

on Plaintiff's "impairment-related limitations and restrictions," the conclusion in the IME statement from Dr. Leonard does not qualify as "medical opinion" under the regulations.

A physician's opinion on the ultimate issue of disability—including whether a claimant can return to past work—is not entitled to consideration. *See Hensley v. Kijakazi*, 2023 WL 4700635, at *1 n.2 (9th Cir. July 24, 2023) ("the ALJ was not even required to consider [a physician's] opinion because it gave an ultimate conclusion of disability instead of objectively describing an impairment's severity"). Dr. Leonard opined that Plaintiff was unable "to return to his usual occupation" and was "eligible for disability retirement." (Doc. 13-2 at 607.) The ALJ did not err in finding this statement from Dr. Leonard "was not entitled to any deference or analysis" (*id.* at 34), because it was a statement on the ultimate conclusion of disability. *See Hensley*, 2023 WL 4700635, at *1 n.2; *see also McLeod v. Astrue,* 640 F.3d 881, 885 (9th Cir. 2011) ("The law reserves the disability determination to the Commissioner").

### B. Social Security Ruling 85-15

Plaintiff contends, "Social Security Ruling 85-15 provides guidance on the effects of work-related stress" that he believes may be instructive to the Court. (Doc. 19-1 at 20.) He asserts that SSR 85-15 "explains[] the degree of stress involved in meeting the demands of a particular job is highly dependent on the individual." (*Id.* at 21.)

Although Social Security Rulings issued by the Commissioner to clarify regulations and policies do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Larson v. Saul*, 967 F.3d 914, 925 (9th Cir. 2020). SSR 85-15 is entitled "Titles II and XVI: Capability To Do Other Work—The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments." SSR 85-15, 1985 WL 56857. The Commissioner indicated SSR 85-15 was issued to clarify "policies applicable in cases involving the evaluation of *solely* nonexertional impairments." *Id.* at *2 (emphasis added). Thus, the Ninth Circuit held that SSR 85-15 is not applicable where a plaintiff claims both exertional and nonexertional impairments. *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995), *cert. denied* 517 U.S. 1122 (1996). Nonexertional activities include "the ability to reach, seize, or hold." *Id.*, 66 F.3d at 183. On the other

hand, exertional activities include lifting, sitting, walking, carrying, pushing, and pulling. *Sandgathe v. Chater*, 108 F.3d 978, 980-81 (9th Cir. 1997); *Nethercutt v. Comm'r of Soc. Sec.*, 2023 WL 2541790, at *3, n.2 (E.D. Cal. Mar. 16, 2023).

Plaintiff raised exertional impairments, which the ALJ incorporated into the residual functional capacity with limitations on Plaintiff's ability to lift, carry, sit, stand, walk, and perform postural activities. (*See* Doc. 13-2 at 30.) Because Plaintiff has both exertional and nonexertional impairments, SSR 85-15 does not apply. *See Roberts*, 66 F.3d at 183; *see also Sandgathe*, 108 F.3d at 980-81 (holding SSR 85-15 was inapplicable because the claimant had exertional and nonexertional impairments); *Gunderson v. Astrue*, 371 Fed. App'x 807, 810 (9th Cir. 2010) (finding SSR 85-15 did not apply because the plaintiff asserted "his impairments include the exertional impairment of chronic back pain"). Consequently, Plaintiff's argument related to SSR 85-15 is unpersuasive, and the Court adopts this finding of the magistrate judge.

### C. Plaintiff's subjective complaints

In the Function Report completed in October 2018, Plaintiff provided information regarding his impairments. (Doc. 13-2 at 260-68.) He reported that he was limited in the ability to work due to chest pain, back pain, constantly urinating and his need for sleep. (*Id.* at 260.) Plaintiff said his capacity to make decisions was limited "due to stress," which caused chest pain. (*Id.*) In addition, Plaintiff reported his back pain caused difficulty with bending over, lifting, standing up, and being in a position for a prolonged period. (*Id.*) He indicated that he was forgetful and needed help to remember medication and to "turn off or on the stove." (*Id.* at 262.) Plaintiff believed he could pay attention for 30 minutes. (*Id.* at 265.) Plaintiff reported that his daughter and grandsons would visit "almost daily," and he attended "church once a week." (*Id.*)

On July 17, 2020, Plaintiff testified at the administrative hearing. (Doc. 13-2 at 43.) Plaintiff reported he still had chest pain, and "any stress brings on [his] chest pain." (*Id.* at 53.) For example, Plaintiff said that driving and being around family caused chest pain. (*Id.* at 48, 70-71.) Plaintiff stated he has heart-related symptoms of shortness of breath, cramps, a tight chest, swelling, and dizziness. (*Id.* at 54.) Plaintiff reported he also has pain in his knee, back, and spine. (*Id.* at 53, 66.) He said his torn meniscus could not be surgically repaired because of his heart issues. (*Id.* at 65-66.)

Plaintiff reported that he has diabetes, but it is controlled with Metformin. (Doc. 13-2 at 58.) He said he has "no problems" with his diabetes. (*Id.*)

He reported that when his knee is inflamed, he can "walk five minutes." (Doc. 13-2 at 66.). He said his back and knee bother him when standing, and he estimated he could "stand in one spot" for about ten minutes. (*Id.*) Plaintiff stated he could not sit comfortably due to back pain, and estimated he could only sit for "five minutes, ten minutes" at a time. (*Id.*) Plaintiff believed he could lift about five pounds due to arthritis in his hands, as well as pain in his back and neck. (*Id.* at 66-67.) He estimated that he could reach about 70% with his right shoulder. (*Id.*)

Plaintiff testified his wife helped him with hygiene, and on a typical day he would "[w]atch cartoons, movies, sleep, [and] read." (Doc. 13-2 at 68.) Plaintiff stated he liked to walk in his yard, and then would "sleep, eat lunch, [and] sleep." (*Id.*) He said he no longer cooked. (*Id.*) Plaintiff reported he did "very little" chores around the house, but did the laundry "every two weeks," washed the dishes, and dusted. (*Id.* at 74.) He explained the laundry was a slow process because he could not lift and carry the basket, and instead did it "piece by piece." (*Id.*) Plaintiff said his son took care of the pets, and Plaintiff would "only feed [them] sometimes." (*Id.* at 71.)

### 1. Standards for reviewing a claimant's statements

In evaluating a claimant's statements regarding the severity of his symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must set forth clear and convincing reasons for rejecting subjective complaints. *Id.* at 1036. As the Ninth Circuit observed, "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). Thus, the ALJ must identify "specific reasons for the weight given to the individual's symptoms," in a manner "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

///

### 2. The ALJ's findings and analysis

The ALJ summarized Plaintiff's subjective complaints, stating:

> In pre-hearing statements and in testimony at the hearing, the claimant alleged that he experiences frequent chest pain, shortness of breath, and dizziness, experiences back pain, has difficulty managing stress, experiences stress when around people, including family, must perform physical activities slowly, has difficulty with decision-making due to stress, has pain when bending over, lifting, or standing for prolonged periods, experiences fatigue, experiences frequent urination, has difficulty reaching overhead with his right upper extremity, and is generally limited in his ability to lift, squat, bend, reach, walk, sit, kneel, remember, complete tasks, concentrate, use his hands, and get along with others [citation].

(Doc. 13-2 at 30-31.) The ALJ then opined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 13-2 at 31.) However, the ALJ found his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record..." (*Id.*) To support these findings, the ALJ considered the objective medical evidence, including Plaintiff's responsiveness to treatment, and Plaintiff's activities of daily living. (*Id.* at 31-33.)

#### a. Duty to identify rejected testimony

The Ninth Circuit requires an ALJ to "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify what testimony "is not credible and what evidence suggests the complaints are not credible"); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints").

The ALJ's finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence of the record" has been criticized by courts—including the Ninth Circuit—as including "boilerplate" language. *See Lambert v. Saul*, 890 F.3d 1266, 1277 (9th Cir. 2020); *see also Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017) (citing *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012)). The Ninth Circuit explained a general statement from the ALJ regarding "the claimant's

statements concerning the intensity, persistence and limiting effects of [his] symptoms" does not "identify what parts of the claimant's testimony were not credible and why." *Lambert*, 890 F.3d at 1277 (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).)  The Court explained that it is unable to "review whether the ALJ the ALJ provided specific, clear, and convincing reasons for rejecting [a claimant's] testimony where… the ALJ never identified *which* testimony []he found not credible." *Id.* (citation omitted).  "Ultimately, the 'clear and convincing' standard requires an ALJ to show [his] work." *Ferguson v, O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (quoting *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022)).

Review of the ALJ's decision reveals the same deficiencies faced in *Lambert*.  Although the ALJ summarized Plaintiff's testimony and then stated his statements concerning the "intensity, persistence and limiting effects of [his] symptoms" were not consistent with the record, this did not satisfy the burden to identify *specific* statements that were not credible. *See Sanders v. Comm'r of Soc. Sec.*, 2024 WL 1641035, at *2 (E.D. Cal. Apr. 15, 2024) (observing that "summarizing [a] plaintiff's testimony is not equivalent to identifying specific statements").  Given the ALJ's failure to identify what testimony is credible—or specific statements that were inconsistent with the record—the Court is unable to make a "meaningful review" of Plaintiff's subjective complaints. *See Lambert*, 890 F.3d at 1277; *see also Renee S. v. O'Malley*, 2024 WL 1257278, at *8 (S.D. Cal. Mar. 25, 2024) (finding identical language "does not satisfy the requirement that an ALJ specifically identify the testimony of the claimant that should be discredited").

### b. Activities of daily living

An ALJ is "permitted to consider daily living activities" in addressing a Plaintiff's subjective statements. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  Daily activities properly "form the basis for an adverse credibility determination" when: (1) the daily activities contradict the claimant's other testimony or (2) the daily activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (factors to consider include "whether the claimant engages in daily activities inconsistent with the alleged symptoms" and whether "the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting").  Here, the ALJ made no such findings.

The ALJ addressed Plaintiff's activities stating: "In pre-hearing statements and in testimony at the hearing, the claimant stated that he can live with others, watch TV, take walks for leisure, read, wash dishes, shop in stores for groceries, do laundry, do house cleaning, care for pets, manage his own personal care, pay bills, count change, spend time with his grandchildren, attend church, follow instructions, and get along with authority figures." (Doc. 13-2 at 33, citing Exh 4E [Doc. 13-2 at 260-268]; Testimony). The ALJ stated: "While the undersigned acknowledges that the claimant has some limitations in performing these activities, and while none of these activities is dispositive, taken together and considered in conjunction with the above evidence of record, they suggest the claimant's impairments are less limiting than alleged." (*Id.*) However, the testimonial evidence indicates Plaintiff had more than "some limitations" with many of the tasks. For example, Plaintiff testified that he required assistance with personal hygiene—including showering—due to back pain, and he did "very little" chores, including the laundry "every two weeks." (Doc. 13-2 at 68, 74.) Plaintiff also reported that his son took over carrying for them due to the stress it caused Plaintiff and his back pain, and Plaintiff would "only … sometimes" feed the pets. (*Id.* at 71.) The ALJ does not explain how any of these activities are inconsistent with the reported severity of Plaintiff's symptoms and pain.

Moreover, the ALJ did not determine that Plaintiff spent a "substantial" part of his day engaged in such activities, or that his limited activities are transferable to a workplace. As the Ninth Circuit observed, "household chores and grocery shopping are not activities that are easily transferable to a work environment." *Blau v. Astrue*, 263 Fed. App'x 635, 637 (9th Cir. 2008); *see also Smith v. Saul*, 820 Fed. App'x 582, 585 (9th Cir. 2020) ("That Smith was able on occasion to perform household chores, feed her animals, leave her home, shop for groceries, and visit family members does not in any way detract from her credibility as to her overall disability") (quotation marks, citation omitted). Thus, the activities identified by the ALJ are not a clear and convincing reason to discount the entirety of Plaintiff's testimony concerning the severity of his symptoms.

          *c.*  *Objective medical record*

The ALJ suggested Plaintiff's subjective statements were inconsistent with the medical record, which the ALJ found indicated Plaintiff's coronary artery disease "has shown some responsiveness to treatment" and his "other impairments other severe impairments have also shown responsiveness to

treatment." (Doc. 13-2 at 31.) The ALJ then provided a summary of the medical record, addressing the evidence related to each impairment chronologically. (*See id.* at 31-33.)

A claimant's "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence..." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("lack of medical evidence cannot form the sole basis for discounting pain testimony"). Moreover, unless the ALJ links a claimant's testimony to "the observations an ALJ makes as part of the summary of the medical record," the summary is insufficient to reject a claimant's statements. *Argueta v. Colvin*, 2016 WL 4138577 (E.D. Cal. Aug. 3, 2016), citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). For example, *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony. *Id.*, 806 F.3d at 491. The district court identified inconsistencies in the ALJ's summary of the medical record that it opined gave rise to reasonable inferences about the plaintiff's credibility. *Id.* On appeal, the Ninth Circuit determined the ALJ failed to identify the testimony she found not credible and did not link that testimony to support the adverse credibility determination. *Id.* at 493. The Court explained that even if the district court's analysis was sound, the court could not cure the ALJ's failure to link the testimony and medical evidence. *Id.* at 494.

The Ninth Circuit also determined an ALJ erred when discrediting symptom testimony as "not entirely consistent with the medical evidence," without linking testimony and medical evidence in *Holcomb v. Saul*, 832 Fed. App'x. 505 (9th Cir. Dec. 28, 2020). In *Holcomb*, the ALJ summarized the claimant's testimony and "determined that his symptom testimony was not 'entirely consistent with the medical evidence and other evidence in the record.'" *Id.* at 506. The Court found that "the ALJ discussed relevant medical evidence but failed to link Holcomb's symptom testimony to specific medical records and explain why those medical records contradicted his symptom testimony." *Id.* The Court observed that "the ALJ never mentioned Holcomb's symptom testimony while discussing the relevant medical evidence." *Id.* Because the Court is constrained to the reviewing reasons identified by the ALJ for discounting testimony, the "failure to specific the reasons for discrediting Holcomb's symptom testimony was reversible error." *Id.* (citing *Brown-Hunter*, 806 F.3d at 494).

Likewise, here, the ALJ offered little more than a summary of the medical evidence, and he did

1  not identify specific conflicts between the testimony and record.  For example, the ALJ acknowledged
2  that Plaintiff reported he "has difficulty with decision-making due to stress" and "is generally limited in
3  his ability to … concentrate." (*See* Doc. 13-2 at 30.)  However, the ALJ did not specify evidence that
4  conflicts with Plaintiff's subjective complaints regarding difficulties with decision-making and
5  concentration to reject Plaintiff's assertion that he could concentrate for only 30 minutes.  The Court is
6  unable to cure this error.  *See Brown-Hunter*, 806 F. 3d at 494; *Holcomb*, 832 Fed. App'x. at 506; *see*
7  *also Marie A.G. v. Kijakazi*, 2023 U.S. Dist. LEXIS 74607, at *11 (C.D. Cal. Apr. 28, 2023) ("In the
8  absence of links between the ALJ's findings and Plaintiff's testimony, the Court may not infer that the
9  ALJ's summary of the treatment record contained actual reasons for discounting Plaintiff's testimony
10 and review them as such").

                **d.**      **Conclusion**

12  Because the ALJ offered little more than a cursory summary of Plaintiff's subjective statements
13 and did not carry the burden to identify *specific* statements rejected, the ALJ failed to properly set forth
14 sufficient findings "to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on
15 permissible grounds." *Moisa*, 367 F.3d at 885; *see also Jenks v. Kijakazi*, 2021 WL 5810646, at *4-6
16 (S.D. Cal. Dec. 7, 2021) (finding the ALJ failed to provide clear and convincing reasons for
17 discounting the plaintiff's testimony where the ALJ merely summarized that subjective testimony,
18 stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these
19 symptoms are not entirely consistent with the medical evidence and other evidence in the record," and
20 then summarized the medical evidence).

21     **D.**      **Lay witness testimony**

22  Generally, "lay witness testimony as to a claimant's symptoms or how an impairment affects
23 ability to work is competent evidence, and therefore cannot be disregarded without comment."
24 *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis, internal citations omitted); *see also*
25 20 C.F.R. § 404.1513(a) (indicating evidence from nonmedical sources will be considered to evaluate
26 a claim under the revised regulations).

27  The ALJ acknowledged that Plaintiff's son, Diego Allan Mortera, completed a third-party
28 statement, which the ALJ opined "contained allegations largely consistent with the claimant's

allegations." (Doc. 13-2 at 31.) However, the ALJ did not otherwise address the statement. Because the ALJ did not identify any reasons to reject the third-party statement, the ALJ committed legal error. *See Patterson v. Comm'r of Soc. Sec.*, 2024 WL 4216810, at *9 (E.D. Cal. Sept. 17, 2024) ("the revised regulations cannot be read to allow an ALJ to ignore lay witness evidence entirely or to disregard such evidence for no reason whatsoever"); *Mateo Thompson Subido v. Comm'r of Soc. Sec.*, 2017 WL 4247977, at *7-8 (E.D. Cal. Sept. 22, 2017) (finding error where the ALJ did not provide any germane reasons to reject third party lay witness statements).

### E. Step four determination

Plaintiff argues substantial evidence does not support the ALJ's finding at step four that he is able to perform his past relevant work, as generally performed. (Doc. 19-1 at 28-29.) The Court should uphold step four and five determinations "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Because the ALJ erred when addressing Plaintiff's subjective complaints—which impacts the residual functional capacity determination— the Court cannot find the ALJ applied the proper legal standards or that substantial evidence supports his conclusion. *See Michael B. v. Kijakazi*, 2023 WL 8456322, at *3-5 (N.D. Cal. Aug. 31, 2023) (finding substantial evidence did not support the ALJ's step four conclusion when "the ALJ did not provide sufficient specific, clear and convincing reasons for discounting Plaintiff's testimony regarding his symptoms").

### F. Remand

Plaintiff requests the Court remand for an award of benefits, arguing that if his testimony is credited as true, the ALJ would have to find him disabled.[3] (Doc. 19-1 at 27, 29.) The Commissioner argues if the Court finds the ALJ erred in his analysis, then "the only appropriate remedy would be to remand for further proceedings." (Doc. 25 at 5; *see also* Doc. 21 at 10-12.)

---

[3] Plaintiff supports this request with an assertion that his application was previously remanded for an ALJ to consider the application, and "the ALJ committed the same mistakes she made in the first hearing decision." (Doc. 19-1 at 29.) Plaintiff also references a "first complaint [filed] in July 2020." (*Id.*) However, Plaintiff's application was then still pending before the ALJ, who held the hearing on July 17, 2020, and issued his decision on March 2, 2021. (Doc. 13-2 at 25-35.) There is nothing in the record indicating that Plaintiff previously filed a request for judicial review of his application, or that it was remanded with for further proceedings. Rather, it appears this argument was mistakenly held over from a brief filed by counsel to support a remand for benefits requested on behalf of different claimant. Consequently, the argument related to a prior remand is disregarded.

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to remand for immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when the court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa*, 367 F.3d at 886 (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). The ninth Circuit explained that remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

Plaintiff's subjective complaints conflict with other evidence in the record, and the ALJ must resolve such conflicts. *See Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (it is the duty of the ALJ and not the reviewing court to resolve conflicts in the evidence). Thus, there are outstanding issues for resolution before a disability determination may be made. Further administrative proceedings are appropriate for the ALJ to provide sufficient findings concerning Plaintiff's subjective complaints and the limitations Plaintiff identified in his testimony. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Dodrill,* 12 F.2d at 919 (remanded for the ALJ to "articulat[e] specific findings for rejecting [the claimant's] pain testimony and the testimony of lay witness"). *Byrnes v. Shalala,* 60 F.3d 639, 642 (9th Cir. 1995) (remanding "for further proceedings evaluating the credibility of [the claimant's] subjective complaints"). Therefore, the Court finds a remand for further proceedings, rather than an award of benefits, is the appropriate remedy.

## V. Conclusion and Order

According to 28 U.S.C. § 636 (b)(1), this Court performed a de novo review of the case. Having carefully reviewed the entire matter, the Court finds the ALJ failed to apply the proper legal standards and declines to affirm the administrative decision. *See Sanchez v. Sec'y of Health & Human*

*Serv*., 812 F.2d 509, 510 (9th Cir. 1987); *Dodrill*, 12 F.2d at 919.  Thus, the Court **ORDERS**:

1. The Court declines to adopt the Findings and Recommendations (Doc. 23).
2. Plaintiff's appeal of the administrative decision (Doc. 19) is **GRANTED**.
3. Defendant's request to affirm the administrative decision (Doc. 21) is **DENIED**.
4. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision.
5. The Clerk of Court is directed to enter judgment in favor of Plaintiff Diego J. Mortera and against Defendant Martin O'Malley, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **September 20, 2024**

*/s/ Jennifer L. Thurston*
UNITED STATES DISTRICT JUDGE